## 503. SOUTHERN RAILWAY COMPANY v. MOUCHET.

1. The allegations of the petition make a cause of action, and the demurrer was properly overruled.

2. A town ordinance prohibiting the blocking of street crossings over the tracks of the railroad beyond a specified time is admissible in evidence where it is claimed that a violation of such ordinance, in connection with other acts of negligence, caused the homicide at the place of the killing.

3. There can be no implied assent to do an act manifestly and obviously dangerous, such as to cross the track through an open space casually and temporarily left between two cars pending the work of switching. One who attempts to make use of such casual opening and to cross the track at such time assumes all the hazard of the dangerous undertaking, and, if killed in the endeavor, the company will not be liable, unless, after seeing his danger or realizing his perilous purpose, it could have avoided or prevented the consequences of his culpable negligence.

4. The verdict, being without evidence to support it, is contrary to law, and for that reason a new trial should have been granted.

Action for damages, from city court of Hartwell—Judge Hodges. March 23, 1907.

Argued October 16,—Decided December 20, 1907.

*A. G. & Julian McCurry,* for plaintiff in error.

*Joseph N. Worley,* contra.

HILL, C. J. The plaintiff, as the widow of Warren A. Mouchet, brought suit against the Southern Railway Company to recover damages for the homicide of her husband. In her petition she sets out the acts of alleged negligence on the part of the defendant, which caused her husband's death, substantially as follows: The tracks of the defendant company run through the town of Bowersville, dividing the business portion of the town. The freight depot is on one side of the tracks, and the passenger depot with a telegraph office is on the other side. There are two streets running east and west, crossing the railroad tracks,—Benson street crossing on the north, and Schaefer street crossing on the south. Between these two streets, besides the main track, there are some side tracks of the defendant railroad and also tracks of the Hartwell Railroad Company, the intervening space being used by both railroad companies as a switch yard. In addition to these two street crossings, it is alleged, there is a pathway between the two street crossings, over the tracks of the defendant company, going from the business houses on one side of the tracks to the business houses on the other; that the public has used this path or footway continuously and uninterruptedly since the defendant has been operating the railroad; that the defendant, during this entire period, has left this pathway opened, and "permitted, invited, and licensed" the public to use said pathway to cross its tracks at this point; that on the day of the homicide petitioner's husband, desiring to go from one side of the town to the other, and it being necessary, in order to do so, to cross the defendant's tracks, went first to the Schaefer-street crossing; that he found that crossing blocked by the cars of the defendant, and, this blocking continuing for twenty minutes or longer, he got tired waiting for the street crossing to be opened, and, being in haste to get across, he went to said path or footway, and by this footway attempted to cross the side-track, where the defendant had left an opening between two cars, about six feet wide, to accommodate

the public in crossing at this point; that one of its cars was stand-ing on the south of said footway, and another on the north; that he had several times before on the same day crossed the track by said pathway at that point without danger or hurt, and, be-lieving that the defendant had arranged its cars so as to keep said pathway opened for the use of the public, and that defendant was mindful of his use of said pathway for the time being, he under-took to make a crossing of the track over said footway, and, as he got in the middle of the track, the defendant suddenly and with-out warning kicked a loose car box against the box car standing on the south of said footway, and drove it back against the car standing on the north of said footway with great force, catching him between the drawheads of the two colliding cars, causing in-juries from which he died within the next few hours. Two acts of negligence are specifically alleged: first, in keeping the Schae-fer-street crossing blocked with cars for over twenty minutes, this being an unreasonable time and in violation of the town ordinance; second, that the defendant, well knowing that said footway was being constantly used by the public, and on said day inviting the public to use it by opening its cars at said point, was charged with the duty of placing a watchman at said footway, where it crossed the track, to warn pedestrians of any impending danger; but this it neglected to do, and this negligence of the defendant was the proximate cause of the homicide. The petitioner alleged, that her husband was entirely without fault or negligence; that finding the Schaefer-street crossing closed, after waiting a reasonable time for the crossing to be opened, he had a right to cross the track by the footpath, and, in doing so, exercised all proper care and diligence in looking out for approaching engines, but, because of intervening box cars on the side track, he did not see and could not see the moving engine which drove the two cars together that caught and killed him.

The defendant demurred generally to the petition, because the facts alleged did not constitute actionable negligence, and because the allegations showed such negligence on the part of the deceased as would prevent a recovery. The demurrer was overruled, and the defendant excepted pendente lite. The defendant moved to strike from the petition paragraph 11, which set up a town ordi-nance prohibiting, under a penalty, railroads from blocking street

crossings for longer than ten minutes. It was alleged that this ordinance was violated, and that this violation was an act of negligence that contributed to the homicide. This motion was overruled, and the defendant excepted pendente lite. At the conclusion of the plaintiff's evidence, the defendant asked a nonsuit, which was denied, and it excepted pendente lite. On the merits of the case it was insisted by defendant that there could be no recovery: (1) Because its agents at the time of the homicide were in the exercise of all reasonable care and diligence. (2) Because the homicide resulted from the negligence of the plaintiff's husband. (3) Because the defendant was guilty of no negligence whatever contributing to the homicide, but, if so, the consequences to himself of such negligence could have been avoided by the use of ordinary and reasonable care and diligence on the part of the deceased.

1. The petition set out a cause of action, and there was no error in overruling the demurrer.

2. The judgment refusing to strike from the petition the paragraph setting up an ordinance of the town, prohibiting the blocking of street crossings by trains, was right. A violation of this ordinance by the defendant might be proper testimony to be considered by the jury in connection with other testimony as bearing upon the question of negligence. *Western & Atlantic R. Co.* v. *Meigs,* 74 Ga. 857.

3-4. The judgment overruling the motion for a nonsuit is immaterial, and we proceed to consider the merits of the case under the facts and the law applicable thereto. We are clearly of the opinion that the evidence does not legally warrant or support a recovery. There were two grounds of negligence alleged as the basis for damages; the blocking of the street crossing for an unreasonable time, and in violation of the town ordinance, which made it necessary for plaintiff's husband to seek the path or footway for the purpose of crossing the track; and the neglect of the company to have a watchman at the path or footway, or to keep a lookout at said footway, in order to warn pedestrians of any impending danger, as the company had "permitted, invited, and licensed" the public use of the path or footway. There is some evidence that Schaefer-street crossing, the one most convenient for the deceased to have used in crossing the tracks, was blocked with

cars for over ten minutes prior to and at the time of the homicide; but the evidence strongly preponderated in favor of the contention of the defendant that such crossing had not been unreasonably or illegally obstructed at any time preceding the homicide. Whatever may have been the truth as to this issue, the testimony in the record does not support the allegations that the deceased went to that street crossing and waited for twenty minutes for the crossing to be cleared. There is no evidence that he went to that street crossing and there waited, but the testimony is that he went from Holbrook's store up the path leading across an open space in the switch yard of the defendant to the track, and attempted to cross the track at a point 48 feet and 5 inches north of Schaefer-street crossing. · If, therefore, the street crossing was blocked, the fact did not in any manner contribute to the killing. He did not go to this crossing or endeavor to use it, but did go directly to an opening between two cars, and at this point attempted to cross the track. Even if street crossings are blocked in violation of law, this is no excuse for pedestrians desiring to cross the track to attempt to cross elsewhere without waiting at all for the crossing to be cleared, and to select, as a place to cross, an open space of six feet between two cars on a track where switching is actually in progress.

The second allegation of negligence is that the path or footway which was used by the deceased in attempting to cross the track was used by the public by permission, invitation, and license of the railroad company, and the company, being charged with the knowledge that said path or footway was being constantly used by the public, was "in duty bound to place some one at said footway to warn pedestrians of the danger into which the deceased fell." The evidence utterly fails to establish the existence of any path or footway leading *across* the tracks, and used by the public by the consent, express or implied, of the railroad company. The path or footway claimed to be used by the public was a footway about a foot and a half wide which led from Holbrook's store to the edge or side of the railroad bed, and then along the bed of the track to the passenger depot. This footway did not go across the track, but to the track and then on the track to the depot and telegraph office. It was known as "Holbrook's path," and was largely made by him in going and coming to and from the telegraph office. The public did use the path in question to walk across the yard of

the defendant to the track, and then on the track to the depot or elsewhere, but the company conducted its business without reference to this use of the footpath.

In *Grady* v. *Georgia R. Co.*, 112 *Ga.* 668, it is held: "In a railroad yard in which there are several tracks in continuous use for the purpose of storing and switching cars and making up trains and the like, and where the dangerous character of the place is manifest and obvious, there can be no implied license to the public to cross the tracks either through open spaces casually left between the cars, or under or over the cars. In order to render the company liable for injury caused to a person who was passing between two cars in such a yard, and whose presence and danger were unknown to the agents or employees of the company, there must be proof of an express license from the company." See also *Kendrick* v. *Seaboard Air Line Ry.*, 121 *Ga.* 775; *Central R. Co.* v. *Rylee*, 87 *Ga.* 491; 3 Elliott on Railroads, §1258. Whether this principle is applicable, without limitation, to a yard of a railroad company in the middle of a town, where the tracks divide the business portion of the town, is not necessary to be considered. Under the undisputed facts of this case, the deceased, in attempting to cross the defendant's track by the footpath while the switching was in progress, was a trespasser, and the company owed him no duty except the duty imposed upon it in reference to a trespasser, not to hurt him wilfully or negligently after he was discovered or his presence known. *Rome Railroad Co.* v. *Tolbert*, 85 *Ga.* 447; *Hall* v. *W. & A. R. Co.*, 123 *Ga.* 213. The uncontroverted facts show, and it is clearly indicated by a diagram proved to be a correct representation of the place of the homicide, that the deceased was not killed while attempting to cross the track by the path or footway. He was caught between the drawheads of two cars and killed 12 feet and 6 inches south of the point where that path led up to the railroad track. The case therefore, as presented by the material and undisputed evidence, and stripped of every extraneous or immaterial circumstance, is simply this: The deceased wanted to cross the track of a railroad in its switch yard. He did not attempt to cross at the public or usual place of crossing, but attempted to cross between two cars at a casual opening about six feet wide, and while switching was in actual progress. He was caught between the drawheads of the cars and killed. It

was in the daytime. If he had exercised in the slightest degree his senses, he would have seen or heard the approaching engine, which was only a few feet away and moving back to the stationary cars. The danger of attempting to cross was clear, manifest, and imminent. The unfortunate man and his widow are the victims of his own culpable negligence, and under the law she can not recover. There is no pretense that the employees of the railroad saw him when he was about to attempt his rash act, or when he was in his perilous situation, or that by the use of any degree of diligence they could have foreseen or avoided the injury. The defense made by the railroad company is complete. The case made by the evidence is a strong one, disproving any negligence on its part, and proving negligence on the part of the deceased.

There is no merit in the several exceptions to the admission of testimony, and to the extracts from the charge. The judgment of the court in refusing a new trial is reversed, on the ground that the verdict is wholly without any evidence to support it, and, therefore, contrary to law.          *Judgment reversed.*