## 2053. CENTRAL OF GEORGIA RAILWAY CO. v. MULLINS.

1. One who, without any employment whatever, but at the request of a servant who has no authority to employ other servants, voluntarily undertakes to perform service for a master is a mere volunteer, and the master does not owe him any duty, except that which he owes to a trespasser,—that is, not to injure him wilfully or wantonly after his peril is discovered.

2. Where a volunteer goes across the tracks of a railroad company into its yard for the purpose of performing a voluntary service, he is required, in the exercise of ordinary care, to use his senses in ascertaining whether there is any danger at that particular time in going into that particular place; and if he goes into the yard when it is being used by the railroad company, and attempts to cross a track immediately in

front of a rapidly approaching train, and, while crossing, is struck by the train, he is guilty of such contributory negligence as would preclude a recovery from the railroad company for injuries thus sustained, unless it be established that the injuries were caused by the wilful and wanton act of the company.

Action for damages; from city court of Greenville—Judge Revill. June 30, 1909.

Argued November 18, 1909.—Decided February 10, 1910.

*Charlton E. Battle, McLaughlin & Jones, Howell Hollis,* for plaintiff in error.

*F. U. Garrard, W. C. Neill, W. R. Jones, N. F. Culpepper,* contra.

HILL, C. J.  Anna Mullins sued the Central of Georgia Railway Company for damages on account of the homicide of her husband.  The jury returned a verdict in her favor for $1,312.  The case is before this court on exceptions to the judgment overruling the defendant's motion for a new trial.  The evidence in behalf of the plaintiff makes in substance the following case:  On June 24, 1907, while a freight-train of the defendant was standing on a sidetrack in Stinson, an unincorporated village, for the purpose of permitting a passenger-train to pass, the engineer left the engine and crossed the tracks to a store, and, while at the store, he requested the plaintiff's husband to carry a message for him to his fireman, whom he had left on the engine.  In obedience to this request, the plaintiff's husband crossed the tracks.  The store was on the east side of the main track, and the freight-train was on the side or passing track, west of and parallel to the main track.  After delivering the message, he started to return to the store, and, in order for him to do so, it was necessary for him to cross the main track.  As he was attempting to cross this track, his attention was called to a rapidly-approaching passenger-train, and he attempted either to cross or to run down the track in front of it, and was struck by the train and killed.  It is not clear, from the evidence, whether he attempted to cross in front of the train or to run down the track.  A public-road crossing was about fifty yards north of the point of the killing.  No signals were given by the engineer of the passenger-train in approaching the crossing, and no effort was made to check the train.  It was running at about thirty miles per hour.  The engineer on the passenger-train either saw or, in the exercise of ordinary care, could have seen the deceased approaching the track, in time to have prevented the accident.  The freight-

engine was making noise sufficient to have prevented the deceased from hearing the approach of the passenger-train. It was contended by the plaintiff that the place where the deceased was attempting to cross the track when killed was frequently used by the general public as a pathway, but on this occasion the freight-train was standing on the track and blocked the pathway. The evidence is here stated most favorably to the plaintiff, but it is practically uncontradicted by the defendant, except as to the failure to give signals when approaching the public crossing, fifty yards from the place of the accident, and as to the conduct of the deceased at the time of the accident. The testimony for the defendant, on the latter point, was, in substance, that the attention of the deceased was called to the approaching passenger-train by the fireman or brakeman of the freight-train, to whom he was talking, and that the deceased saw the approaching train, but nevertheless attempted to cross the track immediately in front of it.

1. From the substantially uncontradicted facts several propositions are clearly deducible: (1) that the deceased, when killed, was acting solely as a volunteer; (2) that he was not using or attempting to use the pathway across the tracks for the purpose of crossing, at the time of the homicide, as the tracks at that place were then being actually used by the railway company, and the pathway was blocked by its freight-train; (3) that the deceased was guilty of contributory negligence in attempting to cross the track immediately in front of the rapidly-approaching train. That the deceased was a volunteer can not be questioned, under the facts and the repeated rulings of the Supreme Court of this State. "One who, without any employment whatever, or at the request of a servant who has no authority to employ other servants, voluntarily undertakes to perform service for a master is a mere volunteer." Here the engineer of the freight-train without any authority from the master, requested the deceased to convey a a message for him to his fireman, and the deceased voluntarily did as he was directed. The only duty, therefore, which the railway company owed to the deceased at the time of the killing was the same duty which it owed to a trespasser, which was, not wilfully and wantonly to injure him after he was seen in a position of peril. *Atlanta & West Point. R. Co.* v. *West*, 121 *Ga.* 644 (49 S. E. 711, 67 L. R. A. 701, 104 Am. St. R. 179). As stated by

the Supreme Court in this case, "The defendant does not, as master, owe to a volunteer any duty whatever. The obligations of master and servant do not arise between them. The defendant is only bound not to injure the volunteer wilfully, and to use care not to injure him after notice of his peril."

2. As to the second proposition the evidence is equally clear. Even assuming that the place where the deceased was killed was a pathway across the tracks of the railroad, much frequented by the public, with the permission or acquiescence of the railway company, there are two reasons why this fact would not be of any advantage to the plaintiff. He was attempting to cross the tracks not in pursuance of any license, actual or constructive, from the railway company, but simply for the purpose of delivering a volunteer message to an employee of the railway company, who was on an engine attached to a freight-train which was standing on one of the tracks of the company, in its yard. While we can imagine a situation in which a volunteer might also be a licensee, yet such was not the fact in this case. Here the deceased was acting as a volunteer in using a part of the pathway crossing the tracks. Besides, the railway company was at the time itself actually using the tracks over which the alleged pathway crossed; and, as this court has held in *Southern R. Co.* v. *Mouchet*, 3 *Ga. App.* 266 (59 S. E. 927), and in *Howard* v. *Augusta Southern R. Co.*, 6 *Ga. App.* 734 (65 S. E. 719), where the railroad company is using its tracks, any implied license or permission to the public to use them is temporarily withdrawn; and in this case the freight-train was blocking the pathway across the tracks and preventing their actual use by the public. The railway company was actually using the tracks within its yard, by virtue of its higher and exclusive right.

3. Now as to the third proposition: Questions of contributory negligence are usually for solution by the jury; and where there is any evidence to support their finding, it will not be disturbed by a reviewing court. Yet in the present case we think the homicide was so clearly the result of the negligence of the deceased himself that the verdict in his favor was unauthorized. He was in the yard of the defendant. It was in the daytime. If the noise of the freight-engine prevented him from hearing the approach of the passenger-train, it did not prevent him from

seeing it.   He did see it, according to the testimony in his behalf, and, notwithstanding the fact that he saw that it was approaching rapidly on the main line, he attempted to cross the track immediately in front of it.   He probably thought that he could get across the track in time; but the company should not be held liable for the mistake in his calculation.   There was no emergency on him to cross the track in front of the approaching train. There was no apparent reason for him to cross the track, except his probable opinion that he could get across in time.   In the case of *Georgia R. Co.* v. *Williams,* 3 *Ga. App.* 274 (59 S. E. 846), Judge Russell uses the following language: "The allegations of the petition, so far from negativing the idea that the deceased, by the exercise of ordinary care, could have avoided the injury, make it apparent that if he had used his senses of sight and hearing in his own behalf, in an ordinarily diligent way, the casualty could have been prevented."   In the present case the facts show that the deceased exercised no care or caution, and failed to exercise his senses of sight and hearing, certainly his sense of sight, and recklessly attempted to cross the track immediately in front of a rapidly-approaching train.   The locality where the deceased was killed was in the yard of the defendant.   A freight-train was standing on one of the tracks.   A passenger-train was due.   It was in an unincorporated village.   It was not at a public crossing. The deceased actually saw the passenger-train rapidly approaching.   He saw the danger, and yet attempted to cross the track immediately in front of the train.   Mr. Justice Cobb, in the case of *Western & Atlantic R. Co.* v. *Ferguson,* 113 *Ga.* 711 (39 S. E. 308, 54 L. R. A. 802), uses the following language: "The rule is settled, that one about to cross a railroad track must use his senses in a way that an ordinarily prudent person would under similar circumstances use them in order to determine whether it would be safe to cross at that time and place; and this is true notwithstanding the company may be by law required to give signals, slacken speed, or do such other acts as would, if faithfully performed, render improbable, if not impossible, injury to any one crossing the track."   It follows, from this decision, that if the railway company was negligent in running its train too fast, or in not giving the proper signals as to its approach, and if the deceased, at the time he was killed, in the exercise of that

degree of care and caution which an ordinarily prudent person would have exercised under the circumstances, could have discovered the defendant's negligence, and, when it was discovered, could, by the exercise of a like degree of care, have avoided the same, then he could not recover. And further on in the opinion the learned Justice says: "If there is anything present at the time and place of the injury which would cause an ordinarily prudent person to reasonably apprehend the probability, even if not the possibility, of danger to him in doing an act which he is about to perform, then he must take such steps as an ordinarily prudent person would take to ascertain whether such danger exists, as well as to avoid the consequences of the same after its existence is ascertained. . . A railroad track is a place of danger, and one who goes thereon is bound to know that he is going into a place where he is subject to the dangers incident to the operation of trains upon that track." The evidence in this case is that the engineer could have seen the deceased for some distance before he reached him. If this is true, the deceased could have seen the approaching train some distance before it reached him, and he was charged with the duty of exercising ordinary care and diligence to see it and to avoid any injury by reason of the rapid speed with which it was approaching.

For the reasons above stated, we are very clearly of the opinion that any verdict in behalf of the plaintiff was unauthorized by the evidence, and we therefore reverse the judgment overruling the motion for a new trial, on the merits of the case and without reference to any of the special assignments of error.

*Judgment reversed.*