4385.  WESTERN & ATLANTIC RAILROAD CO. *v.* POSTON.

The statutory presumption which arose on proof of the killing of the plaintiff's horse by the running of defendant's locomotive and cars was fully rebutted by the evidence, which indisputably showed that the plaintiff's own negligence was the efficient and proximate cause of the killing; and, therefore, a verdict for the plaintiff was contrary to law, in that it was wholly unauthorized by the evidence.

DECIDED JANUARY 22, 1913.

Appeal; from Whitfield superior court—Judge Fite.  July 22, 1912.

*Tye, Peeples & Jordan, Maddox, McCamy & Shumate,* for plaintiff in error.

*William E. Mann,* contra.

HILL, C. J.  Plaintiff sued for the value of a horse killed by the running of defendant's locomotive and train.  He was given a verdict, and the defendant's motion for a new trial was overruled. The case is here on the general statutory grounds alone.  There is no material conflict in the evidence, which, briefly stated, is as follows:  Plaintiff was riding the horse in question in the town of Tunnel Hill.  He came to a public crossing and found it blocked by a freight-train.  He started up the track, riding in a little path along the edge of the ties.  At this point there were three tracks, the main line in the center and a side-track on each side.  He came to another crossing, a few hundred yards north of the first crossing, and found that this also was blocked by a freight-train; so he continued riding alongside the track in the little pathway described. About 200 feet before he reached the third crossing, which was open, and by which he intended to cross, he heard a passenger-train of the defendant coming behind him.  It was running very fast, and the plaintiff just had time to jump down off his horse and attempt to pull him down from the pathway on which he had been riding.  At this point the embankment was ten or fifteen feet high and the little pathway was from four to five feet wide.  The horse pulled back nearer the track, and the train struck him and killed him. The whistle was not blown, nor the bell rung, and the plaintiff did not know the train was approaching, until it was right on him. The track is straight from the tunnel to where the horse was hit, and the only reason why the plaintiff did not hear the train was because the wind was blowing in his face and directly toward the oncoming train, and presumably the only reason he did not see the

train was because he did not look back. This was in substance the plaintiff's evidence. The engineer of the passenger-train that killed the horse testified, that he saw the plaintiff riding alongside the track and in the direction of the second crossing, just north of the depot, and that when the train got within a short distance of the plaintiff it was running about 45 miles an hour. "When I got within a short distance of him . . he got down from the horse and attempted to pull him down the bank, which at that point is steep and on a fill some 10 or 15 feet high. The horse wheeled around, and I saw that he was pulling back. I put the brakes on in emergency, and the engine passed him, but he backed into the train, and the corner of the mail car struck and knocked him down. The reason I did not blow at him was because there was plenty of room for him alongside the track, and he was in safety until the horse began pulling back when he tried to lead him down the bank."

We think, under this evidence, construed most favorably for the plaintiff, he was not entitled, under the law, to a recovery; for several reasons. First, he was guilty of the grossest sort of contributory negligence, in riding alongside the track in the switch-yards of the defendant. The fact that there was a pathway alongside the track gave him no implied permission to use it, it being in the switch-yard of the defendant. *Southern Ry. Co.* v. *Mouchet,* 3 *Ga. App.* 271 (59 S. E. 927) ; *Grady* v. *Ga. R. Co.,* 112 *Ga.* 668 (37 S. E. 861). The fact that both crossings were blocked by freight-trains, which were on the side-tracks, was sufficient to put him on notice that some train was expected on the main line; and to ride in such proximity to the main track, with another train expected, was grossly negligent on his part, even if he had had a right otherwise to use the pathway for that purpose. And again, his effort to lead the horse down the steep embankment caused the horse to pull back and to get in the way of the oncoming train; and this was the proximate cause of the killing of the horse. It was the effort of the plaintiff to get his horse down the embankment and from a situation of danger in which his own negligence had placed it. And finally, even if it be conceded that the defendant was guilty of negligence in running too fast and in failing to blow the whistle or ring the bell, yet the fact that the train was expected was not only indicated by the positions of the freight-trains on the

side-tracks, but it could have been seen or heard by the plaintiff by the use of his senses. The very fact which he gives as the reason why he did not see the oncoming train shows his negligence very clearly; for he says he went upon the pathway without looking back to see if the train was in sight, and the evidence is undisputed that the track was straight, and if he had looked back he would have seen it coming. Therefore, the negligence of the defendant was small as compared with the negligence of the plaintiff, and, for this reason, constituted no ground for recovery. It is perfectly clear that the plaintiff's own negligence caused him to lose his horse; and, while this court is reluctant to interfere with the verdict of a jury, and will not do so on disputed issues of fact, yet where the evidence shows that the verdict was wholly unauthorized, a new trial will be granted.          *Judgment reversed.*